UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| EDDIE L. ALCORN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 07-212-DCR |
| ) | |
| V. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Eddie L. Alcorn ("Alcorn") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner").  [Record Nos. 10 and 11]  For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Alcorn.

**I.   BACKGROUND**

Alcorn filed his application for Supplemental Security Income ("SSI") on February 3, 2005, alleging a disability as of January 20, 2005.  His claims were denied initially and upon reconsideration.  An administrative hearing was conducted before Administrative Law Judge ("ALJ") Don C. Paris in Lexington, Kentucky, on September 6, 2005.  During the hearing, the ALJ heard testimony from Alcorn and Betty L. Hale, a vocational expert.  Thereafter, on November 13, 2006, the ALJ issued a decision denying benefits to Alcorn, concluding that he does not have any impairment or combination of impairments that met the disability

requirements. [Transcript, pp. 11-20 ("Tr., p.__")]  Alcorn's request for review was denied by the Appeals Council on May 30, 2007. [Tr., pp. 6-8]

At the time of the administrative hearing before the ALJ, Alcorn was 38 years old with a limited education. [Tr., p. 17]  He left school in the ninth grade after attending special education classes for several years. [*Id.*]  Alcorn testified that he was able to read and write simple sentences and understand simple math. [Tr., p. 388] In May 2005, a consultative examination was performed by Dr. Sandra Medley, at which time Alcorn was found to have a verbal IQ score of 68, a performance IQ score of 83, and a full scale IQ score of 73 on the Wechsler Adult Intelligence Scale - III.  These scores placed him within the "borderline intellectual functioning" range of intelligence. [Tr., p. 18] He has past relevant work as a janitor in a factory. [Tr., p. 19]  He claims disability due to mild mental retardation, chronic low back pain, and left knee pain. [Record No. 10, p. 1]

After reviewing the medical evidence of record and the testimony presented at the administrative hearing, the ALJ found that Alcorn suffers from the following severe impairments: chronic low back pain, borderline intellectual functioning, and left knee pain. [Tr., p. 16] However, the ALJ found that he retained the residual functioning capacity to perform a limited range of medium exertional work, including his past work as a janitor. [Tr., pp. 17, 19] More specifically, the ALJ noted that,

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of medium exertional work.  He would be able to lift and carry 50 pounds occasionally and 25 pounds frequently, and sit, stand, or walk 6 hours each in an 8 hour work day.  He would be limited to no repetitive, uninterrupted pushing or pulling or use of foot pedal controls with his left lower extremity; no more than

>  frequent climbing, stooping, crouching, bending, or crawling; and he should avoid full body vibration. The claimant has borderline intellectual functioning. However, he has the mental capacity to understand, remember, and carry out simple work tasks; complete the mental aspects of routine work on schedule; tolerate co-workers and accept supervision; and adapt to gradual routine changes in a work environment.

[Tr., p. 17] Based on these findings, the ALJ concluded that Alcorn was not disabled as defined in the Social Security Act and regulations. [Tr., p. 20]

## II.     LEGAL STANDARD

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, a claimant must show that he suffers from a severe impairment. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on

medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual function capacity ("RFC") and relevant past work to determine if he can do past work. If he can, he is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of this analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education and past work experience to determine if he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Wyatt v. Sec'y of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Servs*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant

deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Servs.*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III. DISCUSSION

Alcorn raises one issue in this action. He contends that the ALJ erred in finding that he was not presumptively disabled under the listed impairment for mental retardation set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C ("Listing 12.05C"). He contends that the Sixth Circuit's decision in *Abbott v. Sullivan*, 905 F.2d 918 (6th Cir. 1990), requires an ALJ to address Listing 12.05C whenever there is an IQ score within the prescribed range. Alcorn further asserts that he meets the criteria for Listing 12.05C because the ALJ found that he had other severe impairments in addition to the IQ score within the prescribed range. Alcorn seeks

reversal of the ALJ's decision and an order directing the Commissioner to issue a favorable decision, or, in the alternative, remand of this matter for further proceedings.

Conversely, the Commissioner contends that the ALJ's decision denying benefits to Alcorn is supported by substantial evidence. More specifically, the Commissioner asserts that Alcorn does not meet the requirements of Listing 12.05C based on the 2005 IQ test, the opinion evidence of Dr. Sandra Medley finding that Alcorn had borderline intellectual function, as well as Alcorn's daily reports of his activities and responsibilities. Accordingly, the Commissioner asserts that the ALJ's decision should be affirmed.

Listing 12.05C sets forth the requirements for a finding of mental retardation in relevant part as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C. The Sixth Circuit has repeatedly clarified that a finding of presumptive disability under Listing 12.05C requires the claimant to satisfy the specific factors of paragraph C as well as the diagnostic description in the introductory paragraph. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (holding that "[a] claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder").

-6-

Therefore, to establish a claim under Listing 12.05C, a claimant must prove the following: (1) the claimant suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period (i.e., the diagnostic description)," (2) the record demonstrates a valid verbal, performance, or full scale IQ of 60 through 70, and (3) the claimant suffers from a physical or other mental impairment imposing an additional and significant work-related limitation of function. *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007); *see also Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

In *Abbott v. Sullivan*, the Sixth Circuit addressed the application of Listing 12.05 and found that the Social Security Appeals Council erred in failing to analyze the issue of mental retardation under Listings 12.05B and 12.05C. In that case, the claimant had achieved an IQ score within the range prescribed under Listing 12.05B, which allows for a presumptive finding of mental retardation based on the a valid IQ score alone. The court noted that section B was unique because "[t]he listing allows for a finding of disability due to mental retardation where test scores below 59 on the Wechsler Adult Intelligence Scale (WAIS) are achieved, without any direct proof of functional incapacity." *Abbott*, 905 F.2d at 924. The Court concluded that because Abbott satisfied the IQ score criterion and the Appeals Council had accepted the opinion of the psychological examiner "at face value," the Appeals Council erred in failing to analyze the claimant's mental retardation under section 12.05B and 12.05C. *Id*. at 925.

However, since its decision in *Abbott*, the Sixth Circuit has clarified that, under the 2000 Amendments to the Social Security Act, "a claimant will meet the listing for mental retardation only 'if [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph **and** any one of the four sets of criteria.'" *Foster*, 279 F.3d at 354 (alterations and emphasis in original) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)); *see also Daniels*, 70 F. App'x at 872 ("Plaintiff argues on appeal that Listing 12.05(C) only requires a claimant to provide an I.Q. score of 60-70 and possess an additional limitation, *i.e.*, the diagnostic description in the introductory paragraph of Listing 12.05(C) does not impose additional required showings. However, we already have rejected this argument. *See Foster*, 279 F.3d at 354-55.").

In the present case, although the ALJ failed to explicitly address Listing 12.05C in his decision, the ALJ did consider the results from the IQ tests and the issue of mental retardation under 20 C.F.R. Pt. 404, Subpt. P, App. 1. [*See* Tr., pp. 17-19] The ALJ acknowledged Alcorn's verbal IQ score of 68, but ultimately determined that Alcorn was not mentally retarded. Rather, he found that Dr. Medley's opinion of "borderline intellectual functioning" was entitled to "substantial weight." [Tr., pp. 18-19] In particular, the ALJ noted that,

> At a consultative examination performed by Sandra Medley, Ph.D., on May 20, 2005, the claimant obtained a verbal IQ score of 68, a performance IQ score of 83, and a full scale IQ score of 73 on Wechsler Adult Intelligence Scale - III. These scores placed him within the borderline intellectual functioning range of intelligence. Dr. Medley noted that the claimant did not present symptoms consistent with an Axis I or an Axis II personality disorder. She diagnosed borderline intellectual functioning and a global assessment functioning of 68. The Diagnostic and Statistical Manual of Mental Disorders defines a person who has a rating of 61 through 70 on the Global Assessment Functioning Scale as an individual who would have some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social or occupational functioning, but is generally functioning pretty well and has some meaningful interpersonal relationships. Dr.

> Medley opined that the claimant's ability to sustain concentration and persistence; interact in an appropriate way socially; and respond to pressures found in a day to day work setting, from a mental health standpoint, seemed fair. His ability to understand and remember simple one and two step instructions seemed good. The undersigned has considered Dr. Medley's opinion and has given it substantial weight.

[Tr., pp 18-19]

Further, the ALJ found that Alcorn's work history and activities supported a finding that he was not mentally retarded. The ALJ noted that Alcorn "has been able to work and earn substantial gainful activity in th past" and has past work experience as a janitor in a factory. [Tr., pp. 17-18] Additionally, Alcorn testified that he helps take care of his disabled father, attends to his own personal needs, is able to drive, helps with household chores, takes his parents shopping, holds a yard sale every other weekend, attends flea markets regularly, goes to the library twice a month, and goes to church twice a month. [Tr., pp 17, 386-388, 397-400, 403-404] Finally, the ALJ noted that, in considering the factors contained in Listing 12.05D, Alcorn had no episodes of decompensation and exhibited only "mild restrictions in his activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, and pace." [Tr., p.17]

Based on the ALJ's clear and comprehensive findings, the Court concludes that Alcorn's reliance on *Abbott* is misplaced, as he does not meet the criteria for finding of disability under Listing 12.05C. Rather, the more recent decisions in *West* and *Daniels* support the ALJ's decision that Alcorn is not presumptively disabled under the Listings of Impairments. In *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007), the Sixth Circuit held that a diagnosis of borderline intellectual functioning did not amount to mental retardation and that the

lack of any deficiencies in adaptive functioning precluded a finding that the claimant was presumptively disabled under Listing 12.05C. *West*, 240 F. App'x at 698. In that case, the claimant had a verbal IQ score of 67 and a full scale IQ score of 66. However, the consultative psychologist diagnosed "only borderline intellectual functioning and adjustment disorder, not mental retardation." *Id*. at 699. Additionally, the psychologist noted that the claimant "appear[ed] to be capable of understanding and retaining simple instructions and maintaining concentration and attention skills necessary to complete basic tasks in a work environment," and "would not have difficulty interacting effectively with co-workers and supervisors nor would he experience significant difficulty dealing with a reasonable amount of work stress." *Id*. (internal quotations omitted). The Sixth Circuit concluded that "[t]his medical evidence indicates that West did not exhibit deficiencies in adaptive functioning, and thus supports the ALJ's conclusion that West did not meet or equal Listing 12.05(C)." *Id*.

Similarly, in *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003), the Sixth Circuit held that, although the claimant had a performance IQ score of 67, the ALJ correctly determined that she was not mentally retarded based on other evidence in the record. *Daniels*, 70 F. App'x at 872. According to the court, "[i]n other words, the record indicates no findings that Plaintiff suffered from significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." *Id*. The court relied on the fact that none of the psychologists in the record concluded that the claimant suffered from significantly subaverage general intellectual function or deficits in

adaptive functioning in concluding that the ALJ's decision denying benefits was supported by substantial evidence.

Here, as in *West*, Alcorn has been diagnosed with borderline intellectual functioning, and the ALJ found that diagnosis to be entitled to substantial weight. Also, as in *West* and *Daniels*, the consultative psychologist found that Alcorn does not suffer from marked deficiencies in adaptive functioning. [Tr., p17] The ALJ noted that the State Agency's medical consultant's opinions were not inconsistent with the other substantial evidence in the record and that "no treating or examining source has ever imposed any mental or physical limitations that would prevent the claimant from performing basic work activities." [Tr., p. 19] Accordingly, this Court agrees with the Commissioner's assertion that "the results of the 2005 IQ test, Dr. Medley's diagnosis of borderline intellectual function, and Plaintiff's reports of his daily activities and responsibilities contradict his assertion that he meets the requirements of Listing 12.05C." [Record No. 11, p. 7-8]

Therefore, the Court finds that the ALJ properly determined that Alcorn was not disabled within the meaning of the Social Security Act and regulations. After carefully reviewing the record and the ALJ's decision, it is clear that Alcorn does not satisfy the requirements for Listing 12.05C, and the ALJ's failure to specifically address this section amounts to harmless error. The ALJ's decision denying benefits is supported by substantial evidence and will be affirmed.

**IV.    CONCLUSION**

For the forgoing reasons, it is hereby

**ORDERED** as follows:

     1.     Plaintiff Eddie L. Alcorn's Motion for Summary Judgment [Record No. 10] is **DENIED**;

     2.     The Commissioner's Motion for Summary Judgment [Record No. 11] is **GRANTED**; and

     3.     The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 18th day of April, 2008.

Signed By:
*Danny C. Reeves* DCR
United States District Judge